Let's start with Singh v. Sessions. Good morning. May it please the Court, my name is Amy Nussbaum-Gell from Gell and Gell. I'm representing Petitioner Varinder Singh. He's a Sikh male, a member of Akali Dalman, a Sikh political party in India who was persecuted by the Congress Party. He was savagely beaten twice by the Congress Party for his membership in Akali Dalman, for his political opinion, for his religious opinion. My argument is that the immigration judge made a clearly erroneous decision, credibility decision, which was not based on the totality of the facts and which did not demonstrate clear and cogent reasoning. This decision was upheld by the Board of Immigration Appeals, and furthermore, they made impermissible fact-finding. With regard to the decision itself, the judge basically relied on an error in memory, something that was obvious to any reasonable adjudicator to be an error in memory. A threshold issue is whether the question was raised before the BIA, the question of the exclusion of the materials. Well, first of all, I do believe it was raised because in the notice of appeal and in the brief, the attorney stated that the immigration court erroneously excluded background material. Where was that said? I thought that all they said before the BIA was that the IJ failed to consider the entire record. The documents and the evidence. Well, yes, but fail to consider the entire record would be the record that was admitted. Just as you argued that the judge failed to consider the record a moment ago, that doesn't immediately put someone on notice that you're saying that matters excluded from the record should have been included in it. So it's that that I think we're concerned about. Was that error of exclusion made, was that argument made to the BIA? I believe that it was made because I believe that in the notice of appeal. Well, I'm looking at the brief that was submitted to the BIA. It's in the record and specifically at page fourteen. The assertion is the immigration judge improperly did not give proper weight to the respondent's testimony and his supporting documentation. I don't see anywhere an argument that there was error in the decision to exclude certain documents. So is there something else in the brief that you submitted or somewhere else in the record where you raised the point? I don't believe there was anything significant. But I think that the BIA is aware of the case law. For example, in Dead J.V. McCasey, ruling that a court has a right to waive a filing deadline. If it's in the interest of justice. If you don't tell the BIA that you think the IJ failed to exercise that discretion, why would the BIA know that that was an error they had to review? Because they clearly in the BIA's decision, they indicated that they looked at the documents and that the IJ was not compelled to find that the documents were persuasive or overcame his negative credibility finding. So they did look at the documents and did ignore them and they said that in a specific sentence. And furthermore, I believe that the BIA knows the law that these documents can be looked at. You want to tell us when you say the BIA indicated that they looked at the documents just so that we don't overlook it? Yeah. I'm trying to find the sentence that's in the- I think the sentence you're looking for is at page four of the record. Although the respondent also submitted other evidence? Yes. He was not required to find it sufficiently persuasive? Definitely. Well, I think the next sentence. The respondent has not identified error in the immigration judge's decision to admit his supporting documentation for identification purposes only. I understand that, but the first sentence indicates that they did look at it. And the second sentence says that they didn't raise it. But it says that they did look at it and they didn't have to find it persuasive. And I'm also raising it to this court because the BIA, because this court has power to review the BIA's decision and the court's decision. My feeling is that even without the documents, the credibility finding based on the facts in the record, based on the testimony, based on the application was really outrageous. The immigration judge specifically made mistakes in fact. The respondent initially testified that he came in, that the second attack was March 2010. No, 2012. Then the attorney asked, when did you enter the United States? He said, I entered in November 2011. In fact, he entered in September 2011. And then the attorney said to him, so if you were here in 2012, when was the second attack? He said, 2011. And he repeated that 2011 over and over and over again, despite a very hostile judge who kept badgering him and quoting him back and saying, sir, you said it was March 2012 and he kept repeating, no, I'm sorry, I made a mistake. It was 2011. And he never deviated from that 2011 statement throughout his testimony, and that was fully detailed to the Board of Immigration Appeals. And furthermore, the judge in his one paragraph, basically one paragraph, credibility finding, in which he recounted the testimony twice, made errors of law. He said that the attorney told him that he had entered in 2012, which isn't true. The attorney asked him when he entered. He said he entered in November 2011. The only question that the attorney asked to prompt anything was, if you were in the United States in 2012, when was the second attack? He said, 2011. But the entire wording of the immigration judge was he mischaracterized the testimony. It appears that he wasn't listening to the testimony, that he prejudged it. Then the BIA engaged in impermissible fact finding, because obviously that one sentence wasn't enough. It was so minor, and it was just an error in a date, and not sufficient for a negative credibility finding, so that the BIA went and looked into something else, which was also insufficient and something that the judge couldn't even find. A very confusing colloquy between the trial attorney when he asked, when was the last time you were attacked? Before you came, left India, and then after you left India. And the guy answered in every single scenario. He made no inconsistency. And the BIA made up the fact that there was an inconsistency there, and made factual finding that it wasn't able to make, pursuant to Padmore. And- Do you want to reserve your time? Yes. Thank you. Thank you. Ms. Gordon. May it please the court. I'm Virginia Gordon for the respondent. Your Honors, this is a case about burden of proof. The evidence does not compel a conclusion that the petitioner met his burden to establish eligibility for asylum, withholding of removal, or protection under the Convention Against Torture for two reasons. First, he presented conflicting and changing testimony that undermined his credibility, and he has not pointed to evidence that would compel a contrary result. The inconsistencies that the agency relied on here seem to me really quite minor. One could be explained, this date change could be explained easily just by a slip of the tongue, basically, and misremembering. And the second just seemed to be some confusion about the coming to the home, coming to the field, that also seemed to me the agency placed an awful lot of weight on. Could you speak to that? I mean, aren't those more legitimately treated as de minimis slips of the tongue, rather than telling inconsistencies that support an adverse credibility finding? Yes, and in many cases these may be, on their own, not enough to support an adverse credibility, but we are under the Real ID Act here where any inconsistency or omission can be considered in the totality. Any inconsistency, even if it's a slip of the tongue? Is there no inconsistency that you would discount? No. A slip of the tongue would not be enough to find a person not credible and to have that be supported. Isn't the date inconsistencies really of that nature? I mean, when you are talking about events over an extended period of time, many of us have difficulty recalling exactly what year and could be corrected. Yes, but I think the issue that happened here was that in looking at the totality of the circumstances, the only evidence that the judge had to consider was the testimony, and when looking at the testimony closely, it was filled with these sorts of inconsistencies. Filled with what else were there? I was pointed to these two in particular. And he really only discussed these. I'm sorry, yes, it was these two in particular, but because of these two it led the immigration judge to I apologize, yes, I will not say it was filled with inconsistencies. It had these inconsistencies, and in particular the judge did focus on that March 12th date. And in looking at the testimony, where the issue arose was that the attorney prompted him, so he did not change his testimony until prompted by the attorney when the attorney asked, when did you come into the United States? And he did give that. Your argument would have to be that these are matters for the I.J. who observes the witness to decide whether they're slips of the tongue, whether they're informed by the attorney's prompting that these are matters that we can't second guess on? Yes, under this court you have stated that the I.J. has the best position to be assessing the petitioner's credibility because he's the first one hearing. I apologize I didn't mention that, but I do have the I just want to understand what your argument is, because the argument you're making wouldn't seem to necessarily be persuasive if we can decide, look, this looks like a slip of the tongue to us. So I would think you'd have to argue that that's not within our sphere of review. Correct. There have been instances, though, where the court has said a minor date change wouldn't be enough, but I do believe that This is the incident of, you know, abuse of conduct. This isn't a tangential incident. Right. And what I would argue, to make it myself, I'm sorry, to be more clear, is that the judge does have the first opportunity and should be afforded that discretion to, or I'm sorry, should be considered to have that first opportunity to look at what the person sitting before him providing the testimony gives and make that judgment on credibility based on the demeanor, the candor, the responsiveness, and with limited testimony being the only evidence before him, this is what he had to rely on to say. Go ahead. I was going to say, so now let's talk about the other evidence. The other evidence were hospital records that would have confirmed 2011 hospitalization. Yes, there is a medical record in there. However, it does contradict the petitioner's testimony because it says he was treated in February 2011, so I know this is another date issue, but it just gets to the believability of his account where he said it was in March 2012, then was prompted and changed it to March 2011, and his medical record at page 280 shows that this hospitalization occurred in February 2011, and it's a vague. We have an I.J. who didn't even consider it to get into that, and that's the question I want to ask you is that Preston instructs that the I.J. has a lot of discretion about the deadlines he sets, but he does have the ability to waive a missed deadline, and here I want to understand what your position is on why we shouldn't find that. In this case, his discretion should have been exercised in favor of allowing it. Well, in this case, the petitioner did not provide good cause, and one of the rules under the practice manual is that if you submit late evidence, you provide an affidavit or a personal sworn statement stating why that evidence is late. Now, there was a motion for late filing which included a statement that said despite diligent efforts by the petitioner, he was unable to obtain the evidence. However, there was no additional statement to explain what those diligent efforts were or why he couldn't receive the documents. Now, the majority of the affidavits he submitted were all dated on June 24th or 27th, 2014. That was already after the deadline of June 2nd, 2014, a deadline which had been set on May 23rd, 2012 in the presence of counsel with the petitioner present at court. It was both presented orally and in writing, and they had two years to . . . He required an interpreter? He did require an interpreter, and he did say that . . . Was there an interpreter at the hearing when the deadlines were set? I don't believe there was at that hearing, and what petitioner explained was that his attorney told him that the attorney would explain what he needed to do and what was written on that paper. So, in this case, the attorney had both the oral and written notice, and at a minimum, the petitioner would have the written notice with the assurance from his attorney that the attorney would explain when he needed to submit his documents. He says the attorney didn't do that? He did say that, but he did also decide to continue with his representation, so he seemed to accept that if his attorney didn't give him the deadline that he would move forward. On the waiver issue, it does appear that the BIA considered the question, because it says the respondent hasn't identified error in the immigration's decision to take the documents only for identification. So, it does look like the BIA considered the question. Yes, I think the board, even though he didn't raise the argument, you could say that he did address it. You have a very fair argument that it wasn't raised by the petitioner, but the board went ahead and considered it anyway. Right, that is true. So, in that case, then, if you feel that it's not been waived because of the board making that statement, then what perhaps has been waived is that there was no argument ever made about DEGI until today, and the petitioner did not argue that the immigration judge made an error of law or fact in deciding not to admit the documents. I'm sure I understand you. Okay. Are you taking the view that the BIA's statement in its decision should be construed to say that it is making a finding that there was no error? I don't think you could construe it that way. I think I would construe it as saying the board said there was no argument made about error, and that was the end. No identification of error. Right. It wasn't argued. Right, that it wasn't argued, and they were just pointing out it wasn't argued and marking that down there. But if the court were to disagree, then because it made that statement, we still feel that the argument was not fully made because no argument was made about the abuse of discretion under DEGI stating any fact or error, any error of fact or law that the immigration judge committed in deciding not to admit this evidence. In DEGI, the issue there, the petitioner's counsel explained that her office caught on fire, and that's why the evidence couldn't be submitted even though she had it, and that the immigration judge there abused his discretion in saying that there was no good cause when the office was on fire. But here we have a case where the petitioner and counsel received notice more than two years before the deadline and had two years to gather those documents and did not communicate with the court at any time in those two years until July 8, 2014, six days before the hearing, which doesn't provide, as the immigration judge described, enough time to ensure review of those documents to make sure there's a full and fair hearing. The government attorney had not received any of the documents, so would not have been able to respond to them. And if the immigration judge had admitted them to be fair, he likely would have had to continue the hearing so that DHS could review and respond to that evidence. If there are no further questions, I see my time is almost over. So in summary, the government feels the petitioner has not met his burden because of his incredible testimony and the lack of corroborating evidence, and we ask that this court deny the petition. Thank you. Thank you. Ms. Nussbaum, you did reserve the time. First of all, I believe that in DEDJ you have to look to good cause and the extreme, extreme prejudice and hardship that it would cause and the due process violation that it would cause in not putting in the documents because these documents absolutely contradicted the finding of the judge. The government says no because there was the date discrepancy there. Also, both the immigration judge and the BIA made an error. The respondent never, ever said that the second attack took place in March 2011. He just kept repeating 2011. He never said March 2011. And so it does comport with the documents that all say February 2011, and the judge didn't address it, and that is an issue of fact, and the client never said it. Furthermore, in taking the documents in a normal court proceeding, these were tiny little pages. It would take two minutes to read or one minute to read. When you get rebuttal evidence in a hearing, you look at it. It would have no hardship whatsoever to the government who had been practicing for 15 years and who didn't even object to the evidence. Evidence like this is always taken in because it's very, very difficult for a petitioner to get evidence from a foreign country. And in terms of good cause, obviously there was a lack of communication with the office. It was in tiny little writing in the notice with little initials on the bottom that are hard to make out, and I am sure that he had language problems, and I'm sure that there was a misunderstanding with the office, but he did get the documents, and this is very similar to the Deje case with the gentleman who was persecuted from Togo. He gave in his documents just a few days before the hearing, and they were rejected by the court because the court strictly enforced court local deadlines and made a negative credibility finding, and the documents would have reversed that finding. And the Second Circuit ruled that the court should have taken in those documents in that case. And furthermore, if you look at the judge's decision, he made so many factual errors. Over in his just one paragraph, he made constant factual errors in what the client said. It was as though he wasn't even listening to the testimony, as though he had just prejudged the case. I really don't think that there was nothing in the judge's decision that was reasoned and cogent to deny this case. And I think that the BIA, and I think that this court should perhaps send a message to the courts that it's very, very difficult to get documentation, and people's lives are at stake. You know, I'm not sure I understand. Why should we presume that it's that hard to get documentation from India? I mean, India is a country that does enormous commercial work. We're talking about documents from the hospital. Why should we presume that it's that hard to get hospital documents from India? Well, you know, maybe not in all cases, but these are not— Well, I mean, if your client had made that showing, but you're asking us to send a message that it's hard to get documents from a foreign country. Then I retract that. That's exactly what you said. I retract it. I retract the argument not to send a message. I think in this case, it was in the record. There was no reason that the judge couldn't rely on it. It caused severe, severe hardship to the client, and that's my argument. Thank you. Thank you both. We're going to take the case under advisement. Thank you so much.